IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MARCUS INGRAM, Individually, ) | Civil Action No.: 4:15-CV-03404-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CROWN REEF RESORT, LLC, a South ) | |
| Carolina Limited Liability Company, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on Defendant's motion to dismiss plaintiff's complaint [ECF #13]; Defendant's motion to dismiss plaintiff's supplemental complaint [ECF #22]; and Defendant's motion to stay entry of scheduling orders and certain deadlines [ECF #25]. Both parties have had the opportunity to extensively brief the issues raised in the motions to dismiss, and this Court has thoroughly considered all pleadings filed in this case.[1]

**Factual Background and Procedural History**

On August 26, 2015, Plaintiff Marcus Ingram originally filed this civil action against DJEWL, LLC, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. (the "ADA"). [ECF #1]. On September 23, 2015, Plaintiff amended his complaint to name Crown Reef Resort, LLC ("Crown Reef Resort") as a defendant. [ECF #5]. Plaintiff voluntarily dismissed DJEWL, LLC on September 25, 2015. [ECF #7]. After Defendant filed a motion to dismiss for lack of jurisdiction on January 20, 2016, [ECF #13], Plaintiff supplemented his

---

[1] Under Local Civil Rule 7.09 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

amended complaint on February 8, 2016. [ECF #17]. On February 22, 2016, Defendant filed a subsequent motion to dismiss for lack of jurisdiction that is also currently pending before this Court. [ECF #22]. Defendant raises the same issues in both motions to dismiss filed in this case.

The facts alleged in the supplemental amended complaint are as follows: Plaintiff Marcus Ingram is a Georgia resident who is paralyzed as a result of a spinal cord injury and relies on a wheelchair to ambulate. [ECF #17, p. 2]. Plaintiff visits the Myrtle Beach, South Carolina area and surrounding areas approximately once every quarter with family and friends. [ECF #17, p. 2]. Plaintiff alleges he has been visiting "this area" for approximately ten to fifteen years. [ECF #17, p. 2]. Plaintiff initially alleged that he visited the Crown Reef Resort as a guest on March 10, 2015 and had plans to return to the property from December 21 through December 23, 2015. [ECF #5, p. 2]. Thereafter, Defendant filed its first motion to dismiss for lack of standing, pointing out that in the same time frame Plaintiff alleged to have visited the Crown Reef Resort, he filed other lawsuits alleging he was at other hotels during the same time frame. [ECF #13, p. 3]. Plaintiff then filed the supplemental complaint to allege that he did, in fact, return to Defendant's property on December 21, 2015. [ECF #17, p. 2]. Plaintiff acknowledges in his supplemental complaint that besides visiting public accommodations, including the subject resort as a bona fide patron, he also visits for the purpose of advocating for disabled rights and ensure public accommodations are in compliance with the ADA. [ECF #17, p. 2].

Plaintiff alleges that he has encountered architectural barriers at the subject property which have impaired his ability to safely enter the premises at some arrival points, navigate the premises, park in accessible parking spaces, enter certain spaces, and use certain restrooms and amenities.

2

[ECF #17, pp. 4-5]. Plaintiff's lawsuit alleges that he has a realistic, credible, existing and continuing threat of discrimination from the Defendant's noncompliance with the ADA. [ECF #17, p. 3]. Plaintiff provides specific examples, though not an exclusive list, in the supplemental complaint of the violations he claims he encountered during his visit to Defendant's premises. [ECF #17, pp. 4-5]. Plaintiff seeks a permanent injunction requiring Defendant to remedy any ADA violations found on the premises, in addition to attorney's fees, costs, and expenses and a declaratory judgment that Defendant has violated the ADA. [ECF #17, p. 10].

In response, Defendant filed a motion to dismiss pursuant to 12(b)(1) of the Federal Rules of Civil Procedure, alleging Plaintiff lacks standing to bring this lawsuit as required by Article III of the United States Constitution. [ECF #22-1, p. 4]. Defendant argues that Plaintiff lacks standing to sue the Crown Reef Resort under the ADA because Plaintiff cannot demonstrate that he will suffer an "injury in fact" of the alleged violations of the ADA at the premises. [ECF #22-1, p. 2]. In part, Defendant argues that Plaintiff's status as a "tester," an individual with a disability who travels to public places to determine compliance with the ADA, calls into question whether he legitimately suffered an "injury in fact." [ECF #22-1, pp. 7-8]. Defendant also questions the likelihood that Plaintiff will suffer future harm. [ECF #22-1, p. 8].

## Standard of Review

Defendant files its motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for "lack of subject-matter jurisdiction," which is the court's "statutory or constitutional power to adjudicate a case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The plaintiff has the

3

burden of proving federal jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper only if the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1280-81 (3d Cir. 1993) (*quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). "The threshold to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir. 1989).

When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In considering a motion to dismiss, the factual allegations in a complaint are accepted as true, and the plaintiff is afforded the benefit of all reasonable inferences to be drawn from the allegations contained within the complaint. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Moreover, materials outside the pleadings which relate to jurisdiction can be considered on a motion to dismiss for lack of jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735 (1947); *see also White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (when a defendant raises standing as its basis for a 12(b)(1) motion to dismiss, the district court may consider evidence out side of the pleadings without converting the motion into one for summary judgment).

The doctrine of standing focuses on whether the plaintiff initiating the action is the proper party to bring suit. The constitutional minimum of standing requires three elements: (1) the

4

plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent" and not "conjectural or hypothetical;" (2) there must be a causal connection between the injury and the conduct complained of–the injury has to be "fairly...traceable to the challenged action of the defendant, and not..the result of the independent action of some third party not before the court; (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). The party invoking federal jurisdiction bears the burden of proving these elements exist as they are an indispensable part of the party's case. *Id.* at 561. Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of litigation." *Id.* at 561.  Additionally, a plaintiff seeking injunctive relief may not rely upon past injury to satisfy the injury in fact requirement, but must instead show a likelihood of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

## Discussion

Plaintiff and Defendant disagree on the application of a four-factors test first adopted in an unpublished opinion rendered in *Judy v. Pingue*, No. 08-cv-859, 2009 WL 4261389 (S.D. Ohio Nov. 25, 2009) used to determine whether a plaintiff has standing.  In that case, the district court analyzed whether a plaintiff suffered a "concrete and particularized injury" by considering "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of

5

defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Id.* at *2. The Ohio district court also considered the number of lawsuits previously filed by the plaintiffs in that case.

Plaintiff argues that this test has not been expressly endorsed by any of the courts of appeals. [ECF #23, pp. 10-12]. In an unpublished opinion, the Fourth Circuit Court of Appeals declined to endorse this test in *Daniels v. Arcade, L.P.*, 477 Fed. Appx. 125, 129 (4th Cir. 2012).[2] Plaintiff also relies heavily upon a case decided by the Maryland District Court, *National Alliance for Accessibility, Inc. and Denise Payne v. CMG Bethesda Owner, LLC*, No. JFM-12-1864, 2012 WL 6108244 (D. Md. Dec. 7, 2012), wherein that court also declined to adopt the four-factors test. In *Bethesda*, the District Court of Maryland ultimately concluded a Florida resident did not have standing to sue a hotel located in Washington D.C., noting that a myriad of context-dependent factors bear upon the likelihood that an individual would return to a specific location within a city. *Id.* at *3. Plaintiff argues that he has alleged sufficient facts within his supplemental complaint to conclude he will visit again in the future, and consequently at risk for suffering a concrete and particularized injury.

Defendant argues that Plaintiff does not have standing to sue under the ADA because Plaintiff has not suffered an injury in fact based on the alleged ADA violations outlined in his supplemental complaint. [ECF #22-1, p. 7]. Defendant does not otherwise address whether

---

[2] Unpublished cases are not precedential in this circuit. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006). *Daniels* was also distinguishable because the plaintiff at issue in *Daniels* lived approximately twenty miles from the locale in question and was not a frequent filer of these types of lawsuits. However, other district court cases in this circuit have found these factors helpful in analyzing standing in the context of plaintiff's intention to return to the subject property.

6

Plaintiff meets the other elements set forth in the *Lujan* analysis. Instead, Defendant explains that a plaintiff seeking injunctive relief must demonstrate a "real and immediate threat" of future injury. [ECF #22-1, p. 7]. Specifically, Defendant argues that in considering the four factor analysis used by the courts to determine the likelihood a Plaintiff will suffer a future injury, along with Plaintiff's extensive litigation history, it is clear that Plaintiff lacks standing to sue the Crown Reef Resort. [ECF #22-1, p. 8].

In analyzing whether someone might suffer future harm, a plaintiff must demonstrate the intention to return to the property in question to establish future harm under the ADA. *Harty v. Biggs Park, Inc.*, No. 7:11-CV-22-F, 2014 WL 4243823, at *2 (E.D.N.C. Aug. 24, 2014). When considering the "injury in fact" element of standing, district courts in the Fourth Circuit have considered four factors to determine whether a plaintiff is likely to return to a specified location: (1) plaintiff's proximity to defendant's place of public accommodation; (2) plaintiff's past patronage of defendant's place of accommodation; (3) the definitiveness of plaintiff's plan to return; and (4) plaintiff's frequency of travel near the defendant. *Id. See generally Payne v. Chapel Hill North Properties, LLC*, 947 F. Supp. 2d 567 (M.D.N.C. May 23, 2013); *Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp. 2d 998 (W.D.N.C. Apr. 14, 2011); *Payne v. Sears, Roebuck & Co.*, No. 5:11-CV-614-D, 2012 WL 1965389, at *4-7 (E.D.N.C. 2011). Thus, this Court will consider the four-factors test to guide its discussion regarding Plaintiff's standing to sue under the ADA given the facts of this case. This Court will also address Defendant's argument concerning Plaintiff's litigation history as it relates to Plaintiff's standing to bring this lawsuit.

A. Plaintiff's Proximity to Defendant's Premises

Defendant argues that the great distance between Plaintiff's home in Atlanta and Defendant's premises is a factor weighing heavily against standing. [ECF #22-1, p. 8]. As support for this contention, Defendant cites to several cases that observe the general rule that a distance of more than 100 miles between a defendant's business and the plaintiff's residence weighs against a finding of future harm. *See, e.g., Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp. 2d 998, 1002 (W.D.N.C. 2011); *DeLil v. El Torito Rests., Inc., et al.*, No. C94-3900-CAL, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997). Plaintiff lives nearly four hundred miles away from Defendant's premises, undoubtedly a significant distance compared to similar cases where courts have determined this factor to weigh heavily against a plaintiff. [ECF #22-3, p. 2]. Thus, this Court finds that the distance alone could be indicative of a lower likelihood to return to the subject property, and consequently, suffer future harm. Therefore, this factors weighs against Plaintiff.

B. Plaintiff's Past Patronage of Crown Reef Resort

Defendant argues that Plaintiff's minimal past patronage of the Crown Reef Resort further evidences an unlikely chance of suffering future harm and weighs against standing. [ECF #22-1, p. 9]. Defendant cites a recent district court case finding that a plaintiff who visited a location one time weighed against a finding of standing. *See Harty v. Biggs Park, Inc.*, No. 7:11-CV-22-F, 2014 WL 4243823, at *2 (E.D.N.C. Aug. 24, 2014) ("[d]istrict courts in this circuit and elsewhere have concluded that one visit to the property before filing the complaint is not sufficient to demonstrate likelihood of future injury because 'a plaintiff who has visited a public

8

accommodation only once is unlikely to return.'") (citing *Payne v. Sears, Roebuck, and Co.*, No. 5:11-CV-614-D, 2012 WL 1965389, at *5 (E.D.N.C. May 31, 2012)).  This factor is related to proximity in that it is unlikely a plaintiff who lives a great distance from a stated location will have the means to patronize a hotel on a consistent basis.  Indeed, other courts have found that minimal past patronage weighs heavily against a finding of the likelihood of returning to that location. *Norkunas*, 777 F. Supp. 2d at 1002 (finding that past patronage of a single occasion and a vague desire to return "some day" did not evidence an actual intention on the part of the plaintiff to return); *see also National Alliance for Accessibility v. Macy's Retail Holdings, Inc.*, No. 1:11-CV-877, 2012 WL 5381490, at *5 (M.D.N.C. Oct. 30, 2012) (explaining that a pre-suit second visit to avoid the "single-visit" rule does not necessarily make a post-filing return likely and found that plaintiff did not necessarily prefer this particular store or intend to return).  Similarly, Defendant argues that Plaintiff only identified one visit to Defendant's premises in March of 2015, prior to filing this lawsuit, along with his plans for a future visit. [ECF #22-1, p. 10].  Defendant points out that once it originally filed its motion to dismiss, Plaintiff supplemented his complaint to allege he visited the premises for a second time in December of 2015. [ECF #22-1, p. 10].[3]

Defendant indicates that Plaintiff has not pled any facts in his amended complaint or supplemental complaint suggesting he prefers this hotel over other amenities in the area. [ECF

---

[3] Generally, a court's jurisdiction is determined by the pleadings at the time the lawsuit is initiated. *Daniels v. Arcade, L.P.*, 477 Fed. Appx. 125, 131 (4th Cir. 2012).  However, the Supreme Court has stated that when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, the courts should look to the amended complaint to determine jurisdiction. *Id.*

#22-1, p. 11]. In *Payne*, the district court opined that where a plaintiff's patronage suggests he or she prefers that establishment over others, it is more likely the individual will return to that location. *Payne*, 2012 WL 1965389, at *5. In fact, Defendant argues that a review of recent lawsuits filed by Plaintiff suggest he stayed in several different hotels during the same March 2015 and December 2015 time frame, further evidencing a lack of preference for the Crown Reef Resort. Accordingly, Defendant urges this Court to find that this factor weighs against a finding in favor of Plaintiff having the requisite standing to bring this lawsuit.

Some courts have indicated that one previous visit to a location is insufficient to confer standing because a plaintiff who has visited a location only one time is unlikely to return. *See Nat'l Alliance for Access., Inc. v. Waffle House, Inc.,* No. 5:10-CV-375-FL, 2011 WL 2580679, at *2 (E.D.N.C. June 29, 2011); *Payne*, 2012 WL 1965389, at *5. Indeed, Plaintiff's initial complaint alleged one prior visit to Crown Reef in March of 2015. [ECF #1]. He alleged that he had "plans to return to the property from December 21 through December 23, 2015 pursuant to a confirmed reservation, if the property is made accessible". [ECF #1, p. 2]. In response to the filing of Defendant's motion to dismiss, Plaintiff filed a supplemental complaint on February 2, 2016, to allege he returned to the property on December 21, 2015. [ECF #17, p. 2]. Other courts have indicated that plaintiffs who are aware that a single visit to an establishment might weigh against standing are likely to visit the establishment two times in an event to circumvent this rule. *Payne*, 2012 WL 1965389, at *5. Termed "litigation gamesmanship," these visits do not provide guidance as to the likelihood that Plaintiff will suffer future harm. At the same time, when past patronage suggests Plaintiff has a special preference for an establishment, it is likely

10

that Plaintiff will return in the future. *Id.* While Plaintiff has alleged some facts to suggest he has patronized the Crown Reef Resort in the past and will continue to patronize the Crown Reef Resort in the future, this Court notes that the exhibits attached to Defendant's motion to dismiss indicating Plaintiff also planned to stay at another hotel on the same day in March of 2015 cast some suspicion on the plausibility that Plaintiff maintains any special preference for this particular hotel, given the many options in Myrtle Beach, and the fact that he apparently stays at several different hotels when he travels to Myrtle Beach. Thus, this factor weighs against Plaintiff.

### C. The Definitiveness of Plaintiff's "Plan to Return" to the Crown Reef Resort

Defendant next attacks the likelihood that Plaintiff has definite plans to return to the Crown Reef Resort, and again, urges this Court to find this favor weighing against Plaintiff. Other courts have found that a plaintiff's vague or general statements that he or she intends to return at some point in the future is insufficient to evidence a desire to return to the subject shopping area. *See Harty v. Burlington Coat Factory of SC, LLC*, No. 311-1138-MBS, 2012 WL 264688, at *4 (determining that a plaintiff's residence hundreds of miles from the subject property, coupled with the plaintiff's allegation that he visits South Carolina "often on business" and plans to continue to visit does not state that the plaintiff frequently visits Columbia or otherwise establish an inference he will return to the subject property in the future). Likewise, Defendant argues that Plaintiff fails to make reference to any particular date or event for when he intends to return to Myrtle Beach and stay at this hotel location.

Plaintiff has alleged that he has visited this area on a quarterly basis for ten to fifteen years. [ECF #1, p. 2]. He alleges that he has stayed at the Crown Reef Resort while visiting

11

friends in March of 2015 and December of 2015, and that he intends to return to that location. First, Plaintiff's general allegation that he travels to the Myrtle Beach area covers a large tourist area, where Plaintiff has the choice of one of many hotels. He cannot simply rely on his allegations that he intends to return to "the area" in the future. Further, this Court agrees with Defendant that Plaintiff's plans to stay at Defendant's premises appear suspect, given the other lawsuits he filed which suggest he had plans to patronize at least two other hotels in the same time frame. [ECF #22-4; ECF #22-5].[4]

The fact that Plaintiff's "definite" plans to stay at Crown Reef Resort are during the same time frame as Plaintiff's alleged patronage of other hotels, indicates that he does not have a clear intent to return to this particular location any more so than he does the other hotels he apparently

---

[4] On May 27, 2015, Plaintiff filed a lawsuit alleging he stayed at the Hampton Inn & Suites located at 1803 South Ocean Boulevard, Myrtle Beach, South Carolina 29577 on March 11, 2015 and encountered ADA violations. *Ingram v. Myrtle Beach Oceanfront Inn, LLC*, No. 4:15-CV-02158-RMG. He further alleged that he planned to return on December 23, 2015, pursuant to a confirmed hotel reservation. After Defendant filed a motion to dismiss on July 7, 2015, producing the hotel's reservation roll indicating Plaintiff did not have reservations, the case was dismissed on July 20, 2015. On June 30, 2015, Plaintiff filed another complaint, alleging he visited the La Quinta Inn & Suites at 4709 North Kings Highway, Myrtle Beach, South Carolina, 29577 on March 10, 2015, but elected not to stay due to alleged ADA violations he encountered. *Ingram v. LQ Acquisition Properties, LLC*, No. 4:15-CV-02614. Despite the alleged barriers, and the fact that, according to Plaintiff in this current lawsuit, he stayed at the Crown Reef Resort on March 10, 2015, Plaintiff alleged that he intended to return to the La Quinta Inn & Suites on December 22, 2015, pursuant to a confirmed reservation. The lawsuit against La Quinta Inn & Suites was dismissed on November 16, 2015. Two months after filing that complaint, Plaintiff filed this current lawsuit against Crown Reef Resorts, alleging he stayed at the Crown Reef Resorts on March 10, 2015, again apparently encountering ADA violations, precluding his ability to use and enjoy the property; however, it appears he elected to stay at the Crown Reef Resort. [ECF #1]. Plaintiff further alleged in his initial complaint that he had confirmed reservations to return December 21-23, 2015. [ECF #1]. This allegation contradicts his allegations that he intended to stay at the La Quinta Inn & Suites on December 22, 2015, and the Hampton Inn & Suites on December 23, 2015. A plaintiff's litigation history does not necessarily undermine a plaintiff's intent to return to a particular location. *Nat'l Alliance for Access., Inc. v. CMG Betheda Owner, LLC*, No. JFM-12-1864, 2012 WL 6108244, at *4 (D. Md. Dec. 7, 2012). At the same time, where as here, Plaintiff has alleged in multiple lawsuits that he intends on staying in one of several hotels on the same evening, the allegations call into question the plausibility of his intent to return in the future to any one of those particular hotels.

12

stays at while visiting Myrtle Beach. Even when viewed in a light most favorable to Plaintiff, his allegations do not indicate a reasonable likelihood that Plaintiff will return to this particular hotel.

Defendant argues that Plaintiff's status as a tester bears upon his ability to file this lawsuit. As Plaintiff points out, at least two circuit court of appeals have upheld "tester" standing, finding that the number of lawsuits filed by an individual does not undermine the plausibility of an individual's intent to return to a subject property. *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (1st Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332-34 (11th Cir. 2013). However, in this case, Plaintiff's pleadings in prior lawsuits contradict his allegations that he intends to stay at the Crown Reef Resort in the future, thereby negating the likelihood that he will suffer future harm. *See National Alliance for Accessibility, Inc. v. CMG Bethesda Owner LLC*, No. JFM-12-1864, 2012 WL 6108244, at *4 (D. Md. Dec. 7, 2012) (explaining that plaintiff's extensive litigation history did not undermine the plausibility of her alleged intent to return to the subject property, but also stating that plaintiff's use of form templates in hundreds of prior lawsuits calls into question the plausibility of her specific allegations). Accordingly, this Court finds this factor weighs against Plaintiff.

D. Plaintiff's Frequency of Travel Near the Crown Reef Resort

Defendant argues that Plaintiff's assertions that "he has been coming to Myrtle Beach and the surrounding areas for approximately ten to fifteen years, approximately once every quarter with his friends and family" are intentionally vague and insufficient to establish standing. Defendant also compares the present case to *Harty v. Burlington Coat Factory of S.C., LLC*, No. 3:11-1138-

MBS, 2012 WL 264688 (D.S.C. Jan. 30, 2012), where that court determined the Plaintiff had failed to establish an "actual or imminent" injury. The *Harty* court found that a plaintiff's general desire to return to the property at some later date was insufficient. *Id.* at *4.  In so finding, the *Harty* court reasoned that the plaintiff lived hundreds of miles away, and that although the plaintiff alleged he visited South Carolina often and plans to continue to visit often, plaintiff "did not state that he frequently visits Columbia or otherwise provide the Court with any plausible reasons to infer that he is likely to return to the Property in the near future." *Id.*  This Court does not agree with Defendant that Plaintiff has failed to plead sufficient facts evidencing his frequency of travel near the Crown Reef Resort.  Unlike the plaintiff in *Harty*, Plaintiff alleges that he travels to the area once a quarter, as has been his practice for over a decade, and he alleges he plans on returning thereafter when he comes to Myrtle Beach. [ECF #17, p. 2].  Accordingly, this Court finds this factor weighs in Plaintiff's favor to confer standing because he has indicated he frequents the area of Myrtle Beach, despite living nearly four hundred miles away.  However, overall, the majority of the factors weigh against Plaintiff.

Finally, Plaintiff argues that courts that have not adopted the four-factors discussed above generally cite to three considerations regarding the intent to return to a subject location for the purposes of standing: (1) the plaintiff alleges past injury under the ADA; (2) it is reasonable to infer from the complaint that the discriminatory treatment will continue; and (3) it is reasonable to infer from the complaint that based on plaintiff's past frequency of visits and proximity to plaintiff's home, plaintiff intends to return to the subject location in the future. This Court observes that the second and third consideration are weighing some of the same factual

information that the four-factors test seeks to address.

After considering all of Plaintiff's allegations in his pleadings, as well as Defendant's motion and annexed exhibits, This Court finds that Plaintiff lacks standing to bring this lawsuit. While Plaintiff alleged a past injury under the ADA due to alleged barriers preventing him for safely accessing Defendant's premises, and Plaintiff alleged a frequency of past visits, Plaintiff does not plausibly plead an intention to return in the future to Crown Reef Resort and suffer future harm. Accordingly, for these reasons and for the considerations given in the four-factors analysis discussed above, this Court finds that Plaintiff has not met the threshold burden at this stage in the litigation to confer standing, as required by Article III of the United States Constitution.

## Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendant's motion to dismiss, Plaintiff's response to the motion, and the applicable law. For the reasons stated above, Defendant's motion to dismiss [ECF #13] is **DENIED** as moot because Plaintiff filed a supplemental amended complaint and Defendant filed a second motion to dismiss, alleging the same basis for dismissal. Defendant's motion to dismiss supplemental complaint [ECF #22] is **GRANTED**. Defendant's motion to stay entry of scheduling orders and certain deadlines [ECF #26] is **DENIED** as moot. Plaintiff's supplemental complaint [ECF #17] is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

Florence, South Carolina　　　　　　　　　　　　　　　s/ R. Bryan Harwell
July 29, 2016　　　　　　　　　　　　　　　　　　　　R. Bryan Harwell
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

16